STATE OF NORTH CAROLINA v. BEN WESTER, JR.

No. 846SC212

(Filed 20 November 1984)

1. **Criminal Law § 22— no formal arraignment—no prejudice**

Defendant's motion for arrest of judgment for failure of the court to formally arraign him in open court or to have him sign a written waiver was properly denied where defendant did not object or indicate that he was unaware of the charges against him or that he needed more time to prepare, the court informed the jury that defendant had pled not guilty, and defendant was not prejudiced by the lack of a formal arraignment.

2. **Assault and Battery § 13— testimony about victim's return to work—no prejudice**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, a better foundation could have been laid for establishing that the victim did not go to work as scheduled and could not return to work until a week later due to his injuries, but the testimony taken as a whole did not prejudice the defendant.

3. **Assault and Battery § 13— reference to "victim"—no error**

There was no error in allowing a rescue worker to refer to "the victim" and the "cutting victim" where it was not contested that there was a victim of a serious attack, there was substantial testimony as to the brutality of the attack and its gory results, and there was no testimony that defendant was provoked into the attack.

4. **Criminal Law § 50.2— medical opinion from rescue squad member—no error**

The court properly admitted testimony from a rescue squad member that the victim was going into hypovolemic shock where the witness had been a member of the Enfield Rescue Squad for two years, had completed a full EMT course, had endured 121 hours of classroom work and 10 hours of actual emergency room training, and had recently completed 30 hours of training towards his recertification. He was better qualified to form an opinion on the victim's medical condition than the jury.

**5. Criminal Law § 71— reference to felony during questioning—shorthand statement of fact**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, a deputy's testimony that he had referred to "a felony [that] had occurred" when questioning defendant was merely a shorthand statement of fact and was therefore admissible.

**6. Arrest and Bail § 3.1— warrantless arrest—probable cause**

Defendant's warrantless arrest was lawful, and testimony and evidence surrounding the arrest was admissible, where the arresting officers had probable cause to believe that defendant had committed a felony or a misdemeanor and would flee before he could be apprehended if a warrant was first obtained. G.S. 15A-401(b)(2).

**7. Assault and Battery § 14.3— assault with a deadly weapon with intent to kill inflicting serious injury—evidence sufficient**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, defendant's motions for dismissal and a directed verdict, based on insufficient evidence of a serious injury, were properly denied where the evidence showed that defendant without provocation hit the victim with a Pepsi bottle hard enough to break the bottle, hit the victim with a second bottle which broke while the victim tried to get out of his van, attacked the victim with this broken bottle by slashing him on the neck, stabbed the victim in the eye with the jagged end of the bottle, hit the victim with his fist in the bleeding eye, and kicked the victim.

**8. Criminal Law § 113.3— no instruction on defendant's failure to offer evidence —subordinate feature of the case—no request for instruction**

The court did not err by not instructing the jury on defendant's failure to offer evidence where the subject was a subordinate feature of the case, defendant did not make a written request for a special instruction as required by G.S. 15A-1231, and the general subject was covered in the charge concerning defendant's failure to testify.

**9. Assault and Battery § 16.1— no instruction on lesser degrees of offense—no error**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, the court did not err by not instructing the jury on the lesser included offenses of misdemeanor assault with a deadly weapon, simple assault, and affray where the State's evidence was positive on each element of the crimes on which the jury was instructed, and there was no conflicting evidence as to the seriousness of the victim's injuries.

**10. Assault and Battery § 16.1— failure to instruct on distinction between felony and misdemeanor assault—no prejudice**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, the trial court did not err by refusing to explain the difference between felony and misdemeanor assault related crimes since the crimes of misdemeanor assault with a deadly weapon, simple assault, and affray did not arise on the evidence and did not have to be charged on.

State v. Wester

Moreover, defendant was not prejudiced by the court's instructions on "intent to kill" because he was not convicted of a crime involving intent to kill.

**11. Criminal Law § 113.1— no recapitulation of the evidence—no error**

The court did not err by not summarizing and recapitulating the evidence where the record shows no oral request or tender of a special instruction, the court indicated that it did not intend to recapitulate the evidence, the court asked if there were additions or corrections after delivering the charge, the instructions given applied the law to the facts, and the final mandate complied with the statute. G.S. 15A-1232.

**12. Criminal Law § 138— PIN report of prior offenses**

The court did not err by finding as an aggravating factor that defendant had a prior criminal record based on a Police Information Network computer printout of defendant's record from the District of Columbia. G.S. 15A-1340.4(e) provides that a prior record may be proven by certified court records or by stipulation, but they are not exclusive methods by which prior convictions may be shown.

**13. Criminal Law § 138— aggravating factor—especially heinous, atrocious, or cruel offense—evidence sufficient**

There was sufficient evidence to find as an aggravating factor that the crime was especially heinous, atrocious, or cruel where the evidence showed that defendant attacked the victim without provocation by striking him with two Pepsi bottles with enough force to break them, then stabbed the victim in the eye with the broken bottle, punched the victim in the bleeding area after he had fallen to the ground, and kicked the victim twice before walking away. G.S. 15A-1340.4(a)(1)f.

APPEAL by defendant from *Barefoot, Judge.* Judgment entered 8 June 1983 in Superior Court, HALIFAX County. Heard in the Court of Appeals on 19 October 1984.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Philip A. Telfer for the State.*

*Hux, Livermon & Armstrong by James S. Livermon, Jr., for defendant appellant.*

BRASWELL, Judge.

While sitting in his van at Bellamy's Convenient Mart in Ringwood, North Carolina, William Allen Hales received cuts about his head and face when struck with two glass bottles by the defendant. The defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury, but the

jury returned a verdict of guilty of assault with a deadly weapon inflicting serious injury. On appeal, the defendant's sixteen assignments of error can basically be divided into four categories: (1) arraignment, (2) admission of evidence, (3) jury instructions, and (4) sentencing.

On 9 April 1983, at approximately 9:30 p.m. William Allen Hales drove his van to Bellamy's Convenient Mart where he worked in order to get the store's keys and money so he could open the store the next morning. Hales went into the store and bought a ten-ounce Pepsi and some popcorn, then returned to his van to wait until he could get the money and the keys when the store closed. As he was waiting in the van with friends, Joe, Butterbean, and Rat, the defendant whom Hales had seen while inside came up to the driver's window and asked Hales for a ride down the road. When Hales refused, the defendant offered him money for the ride. Hales explained to the defendant that normally he would give him a ride for free, but that he could not that night because he was waiting for someone. Hales testified that he told the defendant that story because he did not want it known that he was waiting for the money from the store. The defendant indicated that he understood and walked away.

As Hales was talking to Butterbean who was sitting in the back of the van, the defendant went around to the front passenger's window where Joe was sitting. The defendant told Joe that Hales would not give him a ride. As Joe explained that usually Hales would have given him a ride, the defendant reached in the van, picked up the ten-ounce Pepsi bottle off the console between the seats, and threw it at Hales. When the bottle hit Hales' head, it broke and split open his head. Joe, Butterbean, and Rat made a break for the nearest door. As Joe got out by the front passenger's door, the defendant leaned into the van, found a second sixteen-ounce Pepsi bottle, and hit Hales with it. When Hales attempted to escape by the van's side door, the defendant grabbed his shirt and cut Hales on the back of the neck with the jagged end of the broken sixteen-ounce bottle. The defendant then stabbed Hales in the eye with the bottle, cutting a vein near Hales' eye. After further hitting and kicking Hales, the defendant released him and walked away. The rescue squad was called and Hales was taken to the hospital.

## ARRAIGNMENT

[1]  The defendant contends that the trial court erred in denying the defendant's motion for an arrest of judgment for failure of the trial court to formally arraign the defendant in open court or for its failure to have the defendant sign a written waiver. In his brief the defendant states that he "is aware of cases handed down by this Court and by the North Carolina Supreme Court stating that it is not prejudicial error unless the defendant objects and states that he is not properly informed of the charges. This defendant specifically asks and requests this Court to overrule the previous decisions of this Court and the North Carolina Supreme Court on this point." We must decline this invitation. The defendant did in no way object or indicate that he was either unaware of the charges against him or that he needed more time to prepare. "Where there is no doubt that a defendant is fully aware of the charge against him, or is in no way prejudiced by the omission of a formal arraignment, it is not reversible error for the trial court to fail to conduct a formal arraignment proceeding." *State v. Smith*, 300 N.C. 71, 73, 265 S.E. 2d 164, 166 (1980). Because the trial court informed the jury as a part of its charge that the defendant had pled not guilty, we fail to see how he was prejudiced by the lack of a formal arraignment. We hold the trial court properly denied the defendant's motion for an arrest of judgment.

## THE EVIDENCE

The defendant asserts in five assignments of error that the trial court erred in allowing into evidence five items of testimony by three witnesses. Specifically, the defendant asserts that the trial court erred by admitting: (1) the victim's statement as to how long he was out of work following the attack; (2) the rescue squad member's reference to Hales as "the victim" and the "cutting victim"; (3) the rescue squad member's testimony as to the condition of the victim when he arrived at the scene; and (4) the statement made by the arresting officer to the defendant that he was investigating a felony.

[2]  With regard to his first argument, the defendant objected to the admission of this evidence because a proper foundation had not been laid. Although from the record a hornbook foundation was not laid, we hold that any error committed by allowing this

evidence was harmless. The defendant objected to the question: "When did you next go to work after this incident?" This objection was overruled and Hale answered "[a] week later." The only question to which the defendant has taken an exception in the record on appeal was: "When were you scheduled to go to work after this incident?" Hales had already answered this question by previously testifying that he was at the store that night to pick up the key for work the next day. This objected to testimony followed Hales' other testimony concerning the extent and treatment of his injuries. Although a better foundation could have been laid establishing the fact that Hales did not go to work as scheduled and could not return to work until a week later due to his injuries, the testimony taken as a whole did not prejudice the defendant.

[3] The defendant's assignment of error that the trial court improperly allowed Charles Carmen, rescue squad member, to refer to Hales as "the victim" and "cutting victim" is likewise without merit. It was not contested at trial that Hales was the victim of a serious attack. There was substantial testimony as to the brutality of the attack and its gory results. There was also no testimony that the defendant was provoked into attacking Hales. We hold it was not error to allow Carmen to refer to Hales as the victim.

[4] The defendant also contends that the trial court improperly allowed Carmen to express a medical opinion that Hales was going into hypovolemic shock without first formally being qualified as an expert witness. The opinion evidence of a non-expert witness is generally not admissible because it invades the province of the jury. "The basic question in determining the admissibility of opinion testimony, however, is whether the witness is better qualified through his training, skills, and knowledge, than the jury to form an opinion as to the particular issue." *State v. Wright*, 52 N.C. App. 166, 175, 278 S.E. 2d 579, 587, *disc. rev. denied*, 303 N.C. 319 (1981). Carmen testified that he had been a member of the Enfield Rescue Squad for two years, had completed a full EMT course, had endured 121 hours of classroom work and 10 hours of actual emergency room training, and had recently completed 30 hours of training towards his recertification. He was better qualified to form an opinion on Hales' medical condition than was the jury. We hold the evidence was properly admitted.

[5]  The defendant also objects to Deputy Sheriff Dan Stanfield's use of the word "felony" in his testimony. Stanfield testified that when he arrived at the defendant's home on the night of the assault that he found the defendant under a bed at his house, partially covered with a blanket. In response to the question, "What, if anything, did you do then?", the Deputy stated:

> He wanted to know what we wanted. I told him we wanted to question him.
>
> *   *   *   *
>
> I advised him on a question with reference to a felony had occurred.

Contrary to the defendant's assertion, this answer was not unresponsive and prejudicial to him. We hold that the Deputy's use of "felony" was merely a shorthand statement of the facts and was therefore admissible. *State v. Marlow*, 310 N.C. 507, 523-24, 313 S.E. 2d 532, 542 (1984).

[6]  The defendant's next assignment of error contends that the warrantless arrest of the defendant was unlawful and the evidence and testimony surrounding the arrest was inadmissible. G.S. 15A-401(b)(2) provides that with regard to offenses committed out of his presence,

> [a]n officer may arrest without a warrant any person who the officer has probable cause to believe:
>
> a. Has committed a felony; or
>
> b. Has committed a misdemeanor, and:
>
>> 1. Will not be apprehended unless immediately arrested. . . .

Deputy Stanfield had received information from the first officer on the scene that the defendant "had just come back in the area." Stanfield and other officers went to the defendant's parents' home and obtained permission to search the house. The record reveals that at the time of his arrest the officers did have probable cause to believe that the defendant had either committed a felony or that he had committed a misdemeanor and would flee before he could be apprehended if a warrant were first obtained.

This assumption was well founded since the defendant did first attempt to leave by the back door when the officers came into the house before turning back and hiding under the bed. We hold the defendant's arrest was lawful and the testimony and evidence surrounding the arrest was admissible.

[7] In his next argument, the defendant contends that the trial court erred by denying the defendant's motion for a dismissal of the charges and for a directed verdict at the end of the State's evidence and then again at the end of all the evidence. The basis for this assignment of error is that the evidence presented does not tend to show that Hales received a serious injury as a result of this attack to constitute felonious assault. We must disagree.

> It is well settled that upon a motion to dismiss in a criminal action, all the evidence admitted, whether competent or incompetent, must be considered by the trial judge in the light most favorable to the State, giving the State the benefit of every reasonable inference that might be drawn therefrom.

*State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984). Taken in the light most favorable to the State, the evidence reveals that the defendant without provocation hit Hales with a Pepsi bottle hard enough to break the bottle, hit Hales with a second bottle which broke while Hales tried to get out of the van, attacked Hales with this broken bottle by slashing him on the neck, stabbed Hales in the eye with its jagged end, hit Hales with his fist in the bleeding eye, and kicked him. Since there was substantial evidence that Hales' injuries were serious enough to constitute felonious assault, we hold the trial court properly denied the defendant's motions. *See State v. Smith, supra,* at 78-79, 265 S.E. 2d at 169.

## JURY INSTRUCTIONS

[8] At the end of all the evidence, the trial court held a jury instruction conference out of the presence of the jury. At that time the defendant orally requested that numerous specific instructions be given to the jury.

In his first assignment of error with regard to jury instructions, the defendant contends that although the trial court did in-

struct the jury regarding the defendant's failure to testify he erred by not also instructing the jury regarding the defendant's failure to offer evidence. Although the transcript shows an oral request of a general nature to charge "[a]s to the Defendant's failure to offer evidence," the record fails to contain any written request for a special instruction on the topic as required by G.S. 15A-1231 and as upheld in *State v. Harris*, 47 N.C. App. 121, 266 S.E. 2d 735 (1980), *cert. denied*, 305 N.C. 762, 292 S.E. 2d 577 (1982). ("Requests for special instructions must be in writing and must be submitted before the beginning of the charge by the court." *Id.* at 123, 266 S.E. 2d at 737.) The judge is not required to compose the words of a request for a special instruction. Because the subject of a failure of a defendant to offer any evidence is a subordinate feature of the case, and because the general subject was adequately covered in the charge concerning the defendant's failure to testify himself, the failure of the judge to make up and give an instruction on the additional topic did not materially prejudice the case of the defendant. *See* G.S. 15A-1231(b). We find no error.

[9] The defendant's next three assignments of error stem from the trial court's failure to instruct the jury on the lesser included offenses of misdemeanor assault with a deadly weapon, simple assault, and affray. The trial court is not required to instruct the jury on every lesser included offense to the original crime charged unless such offenses arise on the evidence. In the present case, the State's evidence was positive as to each and every element of the crimes on which the jury was instructed. *State v. Hall*, 305 N.C. 77, 286 S.E. 2d 552 (1982). If the jury believed that the defendant was the person who feloniously assaulted Hales, the only other factual determination for them to resolve was whether the assault was committed with an intent to kill. Contrary to the defendant's argument, there was no conflicting evidence as to the seriousness of Hales' injuries to warrant an instruction of these lesser included offenses. "The '[m]ere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice.'" *State v. McWhorter*, 34 N.C. App. 462, 467, 238 S.E. 2d 639, 641 (1977), *disc. rev. denied*, 294 N.C. 443, 241 S.E. 2d 844 (1978), *quoting State v. Hicks*, 241 N.C. 156, 160, 84 S.E. 2d 545, 547 (1954). "The defendant's contention that the jury might have convicted the defendant of the

lesser included offense of assault with a deadly weapon [as well as simple assault and affray] if they had been given the opportunity does not support the submission of the lesser included offense[s] to the jury." *Id.* at 467, 238 S.E. 2d at 641-42. These assignments of error are overruled.

Furthermore, we note that the defendant's contention, labeled Assignment of Error No. 9, that the trial court should have also instructed the jury on the crime of assault with a deadly weapon with intent to kill, G.S. 14-32(c), was abandoned without argument in his brief. *See* Rule 28(b)(5), N.C. Rules App. Proc.

[10] Because these assignments of error are without merit, the defendant's next contention that the trial court erred by failing to define the elements of an assault and to distinguish felonious assault from misdemeanor assault is meritless. Since the crimes of misdemeanor assault with a deadly weapon, simple assault, and affray did not arise on the evidence and did not have to be charged on, the trial court did not err by refusing to explain the difference between the felony and misdemeanor assault-related crimes. Also, within this assignment of error, the defendant contends that the trial court erred in its jury instructions on "intent to kill" and what constitutes a "deadly weapon." We have carefully reviewed the charge and find no error in his instruction to the jury in this regard. Additionally, since the defendant was not convicted of a crime requiring the "intent to kill," we fail to see how he could have been prejudiced by the instructions given.

[11] The final assignment of error relating to jury instructions claims that the trial court erred "in refusing to summarize and recapitulate any of the evidence." There is no record of an oral request or written tender by counsel of a specific instruction on recapitulation of the evidence. However, in the court's conversation with counsel about a different request, the court volunteered the statement that "I do not intend to recapitulate the evidence."

After delivering the jury charge the court inquired: "Now do you have any corrections or additions to this charge?" Although an "off-the-record discussion" occurred at the bench, the transcript fails to disclose any requests for corrections or that any additional instructions were requested by defense counsel. We hold this assignment of error to be without merit.

The statute, G.S. 15A-1232 does not require the trial judge in his charge to recite verbatim, repeat, recount, or recapitulate the testimony of each witness. Such repetition would be redundant to a juror's ears and lengthen jury instructions unnecessarily. We believe that the judge's duty is performed when he summarizes only so much of the evidence as is necessary for him to apply the law. *State v. Moore*, 31 N.C. App. 536, 542, 230 S.E. 2d 184, 187 (1976). Our review of the entire instructions as given to the jury reveals their application of the law to the facts. The final mandate of the charge here complied with the statute. *See State v. Norfleet*, 65 N.C. App. 355, 357-59, 309 S.E. 2d 260, 262-63 (1983).

SENTENCING

[12]  In this assignment of error, the defendant contends that the trial court erred in finding two aggravating factors against the defendant and sentencing him to a term greater than the presumptive sentence. The defendant first asserts that the State's method of proving the defendant's prior criminal record was not in accordance with G.S. 15A-1340.4(e). The State introduced a PIN (Police Information Network) computer printout of the defendant's record from the District of Columbia. The defendant contends that the State was required to offer into evidence the defendant's prior criminal record by either stipulation of the parties or by a certified copy of the court record. We disagree and hold that the use of the PIN report to establish the defendant's prior criminal record was proper. G.S. 15A-1340.4(e) provides that a prior record may be proven by certified court records or by stipulation, but they are not exclusive methods by which prior convictions may be shown. *State v. Graham*, 309 N.C. 587, 593, 308 S.E. 2d 311, 316 (1983). As always, the defendant must be given the opportunity to refute the proffered evidence.

[13]  The second aggravating factor objected to by the defendant was that this crime was "especially heinous, atrocious, or cruel." *See* G.S. 15A-1340.4(a)(1)f. The evidence shows that the defendant attacked Hales without provocation by striking him with two Pepsi bottles with enough force to break them. The defendant then stabbed Hales in the eye with the broken bottle and punched him in the bleeding area after Hales had fallen to the ground. Thereafter the defendant kicked Hales twice before walking away. We hold therefore that there was evidence to support the

finding of this aggravating factor. Based on these two aggravating factors, the trial court did not err in imposing more than the presumptive sentence.

We hold the defendant's trial was without prejudicial error.

No error.

Judges WEBB and EAGLES concur.