CALABRIA, Judge.
Michael Bruce Thomas ("defendant") appeals his judgment entered upon a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury. We find no error.
I. Background
At a restaurant bar called "Zippers" in Lincolnton, North Carolina, defendant assaulted Bryan Wilfong ("Wilfong") with an octagonal beer mug made of thick glass-"about two inches thick," and "quite heavy." When defendant smashed the heavy beer mug into Wilfong's face, his cheekbone collapsed, and blood gushed from his eyes and nose. Wilfong was transported to Lincoln Hospital, where it was discovered that he had sustained a broken orbital bone, a crushed cheekbone, and multiple jaw fractures. The doctors surgically installed titanium plates along Wilfong's jaw and eye socket.
Defendant was arrested and indicted for assault with a deadly weapon inflicting serious injury and tried by a jury on 28 August 2013. After receiving jury instructions for that charge, the jury returned a verdict finding defendant guilty. The trial court sentenced defendant to a minimum of 29 months to a maximum of 47 months in the Division of Adult Correction; that sentence was suspended and defendant was placed on supervised probation for 36 months. As a special condition of probation, defendant was to serve 90 days in the Lincoln County Jail. Defendant appeals.
II. Analysis
A. The State's Motion To Dismiss This Appeal
As an initial matter, due to a clerical mistake in his affidavit of indigency, it appeared that defendant was financially able to retain private counsel. Therefore, the trial court incorrectly denied defendant's motion for the appointment of counsel. In a 5 June 2014 order, the trial court corrected the error, appointed counsel, and denied the State's motion to dismiss the appeal.
On appeal, the State renewed its motion to dismiss. The State argues that the appeal should be dismissed because defendant did not timely perfect the appeal. We disagree.
Rule 7 of the North Carolina Rules of Appellate Procedure governs perfection of the trial transcript-a necessary step towards perfecting an appeal. SeeN.C.R.App. P. 7 (2014). A criminal defendant's responsibilities to perfect an appeal vary depending on his ability to pay for representation. If a defendant is not indigent, Rule 7 allows a defendant fourteen days to contract for a transcript. N.C.R.App. P. 7(a)(2) (2014). However, if indigent, then the clerk of the trial court, not the criminal defendant, orders preparation of the transcript. Id.
Compliance with the Rules of Appellate Procedure is mandatory. State v. Hart,361 N.C. 309, 311, 644 S.E.2d 201, 202 (2007). However, noncompliance with appellate rules alone does not require an appeal's dismissal since "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., Inc.,362 N.C. 191, 194, 657 S.E.2d 361, 363 (2008) (citing Hormel v. Helvering,312 U.S. 552, 557, 85 L.Ed. 1037, 1041 (1941) ); Hart,361 N.C. at 311, 644 S.E.2d at 202. Accordingly, whether we may "excuse non-compliance with the rules depends on the nature of the default." Dogwood,362 N.C. at 194, 657 S.E.2d at 363.
Generally, the circumstances of default fall within one of three categories: (1) waiver at trial; (2) defects in appellate jurisdiction; and (3) violation of non-jurisdictional requirements. Id.Defaults within the first category normally justify an appellate court's refusal to consider an issue on appeal. Id.at 195-96, 657 S.E.2d at 364. At the same time, an appellate court may apply a heightened standard of review in the truly exceptional cases, such as plain error review in criminal appeals, in order to correct fundamental errors. Id.at 196, 657 S.E.2d at 364. When default falls within the second category, an appellate court may only dismiss the appeal. Id.at 197-98, 657 S.E.2d at 364-65. When the default falls within the third category,
[n]oncompliance with rules of this nature, while perhaps indicative of inartful appellate advocacy, does not ordinarily give rise to the harms associated with review of unpreserved issues or lack of jurisdiction. And, notably, the appellate court faced with a default of this nature possesses discretion in fashioning a remedy to encourage better compliance with the rules.
Id.at 198, 657 S.E.2d at 365.
Noncompliance with Rule 7 of the North Carolina Rules of Appellate Procedure falls squarely within the third category of defaults. See Kennedy v. Polumbo,209 N.C.App. 394, 397, 704 S .E.2d 916, 919-20 (2011) (stating that "[n]either Rule 7(a)(1) nor Rule 7(b)(2), which deal with the time and manner for ordering, preparation, and delivery of the transcript of the proceedings, are jurisdictional rule requirements."); North Carolina State Bar v. Sossomon,197 N.C.App. 261, 270-71, 676 S.E.2d 910, 917 (2009) (pointing out that "Rule 7 is a non-jurisdictional defect."); Lawrence v. Sullivan,192 N.C.App. 608, 618-19, 666 S.E.2d 175, 181 (2008) (describing the plaintiff's Rule 7 errors as "non-jurisdictional").
Violations of non-jurisdictional rules "normally should not lead to dismissal of the appeal." Dogwood,362 N.C. at 198, 657 S.E .2d at 365. But, when a party's noncompliance with non-jurisdictional rules rises to the level of a "substantial failure" or "gross violation," the court may impose sanctions, including dismissal of the appeal. Id.at 199, 657 S.E.2d at 366 ; N.C.R.App. P. 25(b), 34(b)(1) (2014). Each determination regarding whether or not noncompliance is a substantial failure or gross violation is a factual inquiry and only the most egregious instances will demand dismissal of the appeal. Dogwood,362 N.C. at 199-200, 657 S.E.2d at 366. In determining whether noncompliance is either substantial or gross, the court may consider "whether and to what extent the noncompliance impairs the court's task of review," "whether and to what extent review on the merits would frustrate the adversarial process," and "the number of rules violated." Id.at 200, 657 S.E.2d at 366-67.
The State moves to dismiss defendant's appeal based on his alleged failure to adhere to Rule 7 of the North Carolina Rules of Appellate Procedure. However, defendant did not violate Rule 7 because he was indigent and not financially able to contract for a transcript. The Rules of Appellate Procedure recognize that the rules for perfecting an appeal are slightly altered for different defendants depending on their indigency status. It would defeat the purpose of the Rules and of promoting justice to punish the defendant for not bearing a burden that should never have been imposed. Therefore, since defendant did not violate the rule, this Court denies the State's motion to dismiss. We now address the merits of defendant's appeal.
B. Jury Instruction on Lesser Included Offense
Defendant argues that because the jury was charged with deciding whether the beer mug was a deadly weapon, the trial court was required to give an instruction on a lesser included offense. Specifically, defendant contends that the trial court erred by failing to instruct the jury on assault inflicting serious injury as a lesser included offense of assault with a deadly weapon inflicting serious injury.
Because a trial court must instruct the jury on all substantial features raised by the evidence, "[f]ailure to instruct upon all substantive or material features of the crime charged is [reversible] error." State v. Bogle,324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "The trial court is not required to instruct the jury on every lesser included offense to the original crime charged unless such offenses arise on the evidence." State v. Wester,71 N.C.App. 321, 329, 322 S.E.2d 421, 425-26 (1984). Rather, such an instruction is required only when the evidence would allow a jury to rationally find a defendant guilty of a lesser included offense and to acquit him of the greater offense. State v. Millsaps,356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). Challenges to the trial court's decisions on how to instruct the jury are reviewed de novo. State v. Osorio,196 N.C.App. 458, 466, 675 S.E.2d 144, 149 (2009).
Misdemeanor assault inflicting serious injury, as defined by N.C. Gen.Stat. § 14-33(c)(1), is a lesser included offense of felonious assault with a deadly weapon inflicting serious injury. State v. Lowe,150 N.C.App. 682, 685, 564 S.E.2d 313, 315 (2002). The difference between the two offenses is that
a conviction of felonious assault requires a showing that a deadly weapon was used andserious injury resulted, while if the evidence shows that only one of the two elements was present, i.e., that eithera deadly weapon was used orserious injury resulted, the offense is punishable only as a misdemeanor.
State v. Owens,65 N.C.App. 107, 110-11, 308 S.E.2d 494, 498 (1983). "[W]hether simple assault should [be] submitted as an alternative verdict depends upon whether the [instrument is] a deadly weapon ... as a matter of law." State v. Palmer,293 N.C. 633, 642, 239 S.E.2d 406, 412 (1977). "If it [is], simple assault [instructions] need not [be] submitted." Id.at 642, 239 S.E.2d at 412.
Here, the trial court submitted the issue of whether the beer mug was a deadly weapon to the jury and did not give an instruction on the lesser included defense of misdemeanor assault inflicting serious injury. The question before us, then, is whether or not a beer mug, according to the facts of this case, is a deadly weapon as a matter of law.
A deadly weapon is generally defined as "an instrument which is likely to produce death or great bodily harm, under the circumstances of its use." State v. Cauley,244 N.C. 701, 707, 94 S.E.2d 915, 920 (1956) (citing State v. Watkins,200 N.C. 692, 694, 158 S.E. 393, 394 (1931) ). Some instruments, such as a rifle or pistol, are deadly per se[1] ; others become deadly because of "the great and furious violence and manner of use." Id."The distinction between a weapon which is deadly or dangerous per seand one which may or may not be deadly or dangerous depending upon the circumstances is not one that lends itself to mechanical definition." State v. Torain,316 N.C. 111, 121, 340 S.E.2d 465, 471 (1986).
The deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself. Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly ... is one of law, and the Court must take the responsibility of so declaring.
State v. Smith,187 N.C. 469, 470, 121 S.E. 737 (1924) (citations omitted). If an instrument is not deadly per se,then it is a question of fact for the jury to determine whether the instrument's manner of use still qualifies it as a deadly weapon. Id.
The State contends, and we agree, that our appellate courts, when determining whether or not an instrument is deadly per se,have placed significance upon the fact that a victim was violently struck in the head. See, e.g., Smith,187 N.C. at 470-71, 121 S.E. at 737-38 (victim was killed after the defendant struck him in the head with a baseball bat, an instrument which the Court found to be deadly per sedespite the defendant's self-defense claim); State v. Hefner,199 N.C. 778, 779-80, 155 S.E. 879, 880-81 (1930) (where officer was struck on the side of his head with a "blackjack," depriving him of consciousness, the instrument was "appropriately [ ] classed among weapons which are likely to produce death or great bodily harm"); State v. Daniels,38 N.C.App. 382, 384, 247 S.E.2d 770, 771 (1978) (citing Hefnerand holding that "[t]he trial court did not err in failing to submit the lesser offense of simple assault to the jury" as the blackjack used to strike "the victim with force on the head" was deadly per se); State v. Liggons,194 N.C.App. 734, 743, 670 S.E.2d 333, 340 (2009) (given that "the instrument [the defendant] used to assault [the victim] was a rock which ... was large enough to shatter the windshield, bend the steering wheel, and fracture [the victim's] skull [,]" it was deadly per se) Furthermore, and particularly on point here, in State v. Morgan,we upheld a trial court's determination that a wine bottle made of "thick" glass was a deadly weapon per se,where the defendant approached one victim from his "blind side" and struck him in the head with such force that the "bottle ... broke upon impact."[2] 156 N.C.App. 523, 530, 577 S.E.2d 380, 386 (2003). The defendant's blows caused severe cuts on the victim's "head which required staples and stitches to close the wounds." Id.
We also find it important that in cases where an instrument has not even been identified, its deadly character may be inferred from the injuries which were inflicted. See State v. Phillips,87 N.C.App. 246, 249, 360 S.E.2d 475, 477 (1987) (maintaining a defendant's conviction where the victim was "diagnosed as having a broken cheekbone and where he was treated for bruises and lacerations"); State v. Greene,67 N.C.App. 703, 707, 314 S.E.2d 262, 264 (1984) (jury could infer that an instrument was deadly per sewhen the object the defendant used to strike the victim in the head knocked the victim to the floor and caused a hematoma and a laceration to the back of the victim's head).
The State presented evidence that defendant approached Wilfong's blind side and struck him in the face with a heavy glass beer mug. Defendant used the mug with such violent force that it shattered Wilfong's jaw, cheek, and eye socket, and caused blood to gush from Wilfong's eyes and nose. As a result of defendant's single blow, part of Wilfong's face caved in, took on the imprint "of a beer mug," and was essentially demolished. To repair the injuries Wilfong sustained to his face, surgeons inserted titanium plates. On these facts, we conclude that the heavy glass beer mug, given the violent manner of its use, was "of such character as to admit of but one conclusion," and the trial court should have declared it a deadly weapon per se.
Therefore, although the trial court submitted the "deadly weapon" question to the jury, it would have been entirely appropriate for the court to have given a peremptory instruction on this issue. Because the trial court allowed the jury to decide this question, defendant benefitted from a higher burden of proof (beyond a reasonable doubt) and his argument on appeal is without merit. Certainly, any alleged error in the jury instructions was harmless. Torain,316 N.C. at 119, 340 S.E.2d at 470 ("[W]here the trial judge has left to the jury the question of the dangerous or deadly character of a weapon of 'such character as to admit of but one conclusion,' our appellate courts have often found harmless error."). Our Supreme Court has previously held,
[i]n State v. Perry,226 N.C. 530, 39 S.E.2d 460 (1946), ... that a brick thrown with force by the defendant constituted a deadly weapon [per se], and it was not error for the trial court to refuse to submit to the jury the [the lesser included offense] of simple assault, even though the question of whether the brick as used was a deadly weapon was submitted to the jury.
Daniels,38 N.C.App. at 384, 247 S.E.2d at 771. Likewise, in State v. Collins,when the issue of whether a two and one-half inch knife was deadly per sewas decided by a jury, our Supreme Court held that "[t]he error of his Honor consisted in leaving that to the jury as a question of fact which is strictly one of law." 30 N.C. 407, 412 (1848).
III. Conclusion
Because we determine that the beer mug defendant used to assault Wilfong was a deadly weapon per se,any error by the trial court in submitting the "deadly weapon" question to the jury was harmless, and the court properly refused to instruct the jury on the lesser included offense of misdemeanor assault inflicting serious injury. See Daniels,38 N.C.App. at 383, 247 S.E.2d at 771 ("If the weapon used ... by the defendant was a deadly weapon per sethe trial court was not required to charge on the lesser included offense of simple assault, even though the trial court did not charge that the instrument used in the assault was a deadly weapon [per se].").
We find no error in the trial court's instructions and the judgment.
NO ERROR.
Judges McCULLOUGH and DIETZ concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 30 August 2013 by Judge William R. Bell in Lincoln County Superior Court. Heard in the Court of Appeals 3 March 2015.

When referring to deadly weapons, our courts have used the terms "deadly per se " and "deadly as a matter of law" interchangeably. From this point on, for the sake of consistency, we use "deadly per se, " even when citing cases that found instruments to be "deadly as a matter of law."

We note that the official holding in Morgan was that "the evidence amply supported the trial court's instruction that a broken wine bottle is a ... deadly weapon [per se ]." Id. at 530, 577 S.E.2d at 386 (emphasis added). There were two victims in Morgan, both of whom were cut with the remains of a broken wine bottle.
However, the Morgan Court's analysis as to the first victim focused on the initial blow that the defendant-using "a 1.5 pint [unbroken] wine bottle made of 'thick' glass"-delivered to that victim's "blind side [.]" Id. Moreover, in State v. Debiase, although this Court assumed, without deciding, "that the trial court was correct in instructing the jury that [a] beer bottle was a deadly weapon [per se ]," it cited Morgan, parenthetically, in the following way: "holding that ... an Arbor Mist wine bottle, with which the defendant hit the victim in the head, was a deadly weapon [per se. ]" 211 N.C.App. 497, 510, 711 S.E.2d 436, 444 (2011). Accordingly, we find that Morgan directly supports the proposition that an unbroken bottle, according to the manner of its use, may be properly considered a deadly weapon per se.