STATE OF NORTH CAROLINA v. JOEL AMONE LIGGONS

No. COA08-238

(Filed 6 January 2009)

**1. Assault— intent to kill—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the element of "intent to kill" from the assault charge pertaining to the female victim even though defendant contends there was insufficient evidence that defendant threw a rock toward the victim's windshield intending to kill her because: (1)

defendant and his accomplice had discussed intentionally forcing motorists off the highway in order to rob them; and (2) it was foreseeable that such deliberate action could result in death, either from the impact of the rock on the victim or from the victim's losing control of her vehicle and becoming involved in a deadly automobile accident.

**2. Appeal and Error— preservation of issues—failure to argue**

Although defendant assigned error to the trial court's denial of his motions to set aside the verdict of guilty on the charge of assault with a deadly weapon with intent to kill inflicting serious injury and for a new trial, this assignment of error is deemed abandoned under N.C. R. App. P. 28(b)(6) because defendant failed to argue this assignment of error in his brief.

**3. Robbery— instruction—acting in concert—unidentified person**

The trial court did not abuse its discretion in a robbery with a dangerous weapon case by instructing the jury on the doctrine of acting in concert because: (1) the two victims testified that two men participated in the robbery; (2) defendant told a detective that he and an accomplice planned a robbery; (3) the prosecutor's theory was that defendant acted in concert even though the State was never able to clearly establish who the other person would have been; and (4) the sufficiency of the evidence against a codefendant was irrelevant, and a defendant may be found to be acting in concert with an unidentified person.

**4. Assault— deadly weapon with intent to kill inflicting serious injury—rock a deadly weapon—failure to instruct on lesser-included offense**

The trial court did not err by determining as a matter of law that the rock used to assault the female victim was a deadly weapon and by failing to instruct the jury on assault inflicting serious injury as a lesser-included offense of assault with a deadly weapon with intent to kill inflicting serious injury because: (1) the instrument used to assault the victim was a rock which, when thrown at the driver's side windshield of the victim's car as she was driving 55 or 60 miles per hour, was large enough to shatter the windshield, bend the steering wheel, and fracture her skull; and (2) the size of the rock and the manner in which it was used led to the sole conclusion that the rock was a deadly weapon.

STATE v. LIGGONS

[194 N.C. App. 734 (2009)]

## 5. Evidence— expert opinion testimony—serious injury

The trial court did not abuse its discretion by permitting a doctor specializing in radiology to offer her opinion that the female victim's head injuries were serious because: (1) the testimony was admissible under N.C.G.S. § 8C-1, Rule 702 since it could assist the jury in determining a fact at issue, namely whether serious injury was inflicted upon the victim; (2) the witness was competent to offer her expert opinion on the diagnosis of the victim's injuries based upon her review of the victims C.T. scans, including the severity of those injuries; and (3) the doctor's expert opinion testimony was not rendered inadmissible on the basis that it embraced an ultimate issue to be determined by the jury.

Appeal by Defendant from judgments and commitments entered 20 November 2007 by Judge Thomas H. Lock in Cumberland County Superior Court. Heard in the Court of Appeals 28 August 2008.

*Attorney General Roy Cooper, by Assistant Attorney General David N. Kirkman, for the State.*

*Geoffrey W. Hosford for Defendant.*

STEPHENS, Judge.

On 3 January 2006, Defendant Joel Amone Liggons was indicted for assault with a deadly weapon with intent to kill inflicting serious injury, robbery with a dangerous weapon, and assault with a deadly weapon inflicting serious injury. The case came on for trial at the 13 November 2007 Criminal Session of Cumberland County Superior Court. The jury returned verdicts of guilty on all charges. The trial court sentenced Defendant to consecutive prison terms of 133 to 169 months, 105 to 135 months, and 41 to 59 months. From these judgments and commitments, Defendant appeals.

### Facts

In the late evening of 29 August 2005, Edith Underwood was driving in her car with Harold Pope on Highway 24. They had left a club in Fayetteville and were heading toward their home in Autryville. Their car was traveling at about 55 or 60 miles per hour. Underwood saw a black male on the side of the road wearing a grey sweatshirt and blue jeans and holding a rock, which he looked like he was about to throw. Then a rock crashed through

Underwood's windshield, hitting the steering wheel, and hitting her in the head. She lost control of the car. Pope took control of the steering wheel and eventually brought the car to a stop on the side of the road. Pope covered Underwood's head injury with tissues in an attempt to stop the heavy bleeding. Then a man hit the side of the car and told Pope to get out of the car because he knew who had thrown the rock. Pope got out of the car holding a beer bottle in his hand.

The man grabbed Pope around the neck, threw Pope on the ground, and kicked him. Pope tried to hit the man with his beer bottle. Eventually, the man seized the beer bottle from Pope and started hitting him in the head with it. Underwood picked up the rock that had been thrown through the windshield, got out of the car, and threw the rock at the man, telling him to leave Pope alone. The rock hit the man in the hand. Underwood then kicked the man in the leg. The man hit Underwood in the face and knocked her to the ground. He rolled Pope over, took his wallet, and fled.

Underwood and Pope got back into the car and locked the doors. Pope called the highway patrol, who advised him to drive to the Fuel Zone gas station nearby. A few seconds later, two men showed up and began banging on the windows of the right side of the car. Underwood and Pope drove off and headed to the gas station.

An ambulance picked up Underwood and Pope at the Fuel Zone and took them to the hospital. Underwood had a severe skull fracture and underwent surgery to remove the pieces of bone and rock lodged in her brain. In addition to her head injury, Underwood suffered a broken nose and broken bones near her eye socket. After her brain surgery she spent a week in the hospital. Pope had hemorrhaging in his eye and head from being hit with the beer bottle and spent three days in the hospital.

The morning after the attack, Cumberland County deputy sheriffs located the crime scene on the shoulder of NC 24, not far from Interstate 95. They found a rock with what appeared to be blood on it, Pope's cigarettes, glasses, and nitroglycerine pills, and a broken beer bottle.

A sheriff's department K-9 team followed a scent trail from the crime scene to a point farther up the road. The scent trail then turned left into the woods and continued to the edge of a neighborhood known as Bladen Circle.

STATE v. LIGGONS

[194 N.C. App. 734 (2009)]

Deputies found Pope's wallet, containing Pope's identification cards and credit cards, on the ground near Bladen Circle. The wallet also contained Defendant's driver's license.

In the early evening of 30 August 2006, while deputies were still in the neighborhood, Defendant went to the home of his former foster mother, Letha Ray. Ms. Ray noticed that his hand was swollen. He told her and Mildred Boykin, also of Bladen Circle, that he was the one who had attacked the two motorists the night before. He said he wanted to turn himself in. Ms. Ray called the Sheriff's Department. Deputies soon arrived and took Defendant into custody.

After he was taken into custody, Defendant advised Cumberland County Sheriff's Detective Steve Ranew that Antoine Henry Ackin was the one who had thrown the rock through Underwood's windshield. Defendant admitted to robbing Pope. He said that earlier in the evening, he and Ackin had been consuming marijuana and realized they needed more money for drugs. He told Ranew that they decided to commit a robbery by making a car swerve off the highway.

Defendant showed Ranew the injury to his left hand where he had been hit by the rock thrown by Underwood. He said Ackin took the wallet from Pope and then gave it to him. Defendant said he eventually threw the wallet into the woods off Bladen Circle at the suggestion of a friend. Prior to trial, Defendant recanted his statements about Ackin's participation in the crime.

After the State presented its evidence, Defendant moved to dismiss the charges. The motion was denied. Defendant presented no evidence and renewed his motion to dismiss, which was again denied. The jury found Defendant guilty on all charges.

## I. Motion to Dismiss

[1] By his first assignment of error, Defendant argues that the trial court erred in denying his motion to dismiss the element of "intent to kill" from the assault charge pertaining to Underwood because the State failed to offer sufficient evidence that Defendant threw a rock toward her windshield intending to kill her.

When a defendant moves to dismiss based on insufficiency of the evidence, the trial court must determine whether there is substantial evidence (1) of each element of the crime charged and (2) that the defendant is the perpetrator. *State v. Scott*, 356 N.C. 591, 573 S.E.2d 866 (2002). "Substantial evidence is evidence from which any rational

trier of fact could find the fact to be proved beyond a reasonable doubt." *State v. Alston*, 131 N.C. App. 514, 518, 508 S.E.2d 315, 318 (1998) (quotation marks and citations omitted). The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be drawn from the evidence. *State v. Graves*, 343 N.C. 274, 278, 470 S.E.2d 12, 15 (1996) (citation omitted). Whether the evidence presented is direct or circumstantial or both, the test for sufficiency is the same. *State v. Vause*, 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991); *State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then "it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland*, 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965).

"Proof of an assault with a deadly weapon inflicting serious injury not resulting in death does not, as a matter of law, establish a presumption of intent to kill." *State v. Thacker*, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972). Instead, the intent to kill must be found as fact from the evidence. *State v. Ferguson*, 261 N.C. 558, 135 S.E.2d 626 (1964). A defendant's intent is seldom provable by direct evidence and must usually be proved through circumstantial evidence. *State v. Cauley*, 244 N.C. 701, 94 S.E.2d 915 (1956). "However, the nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *State v. White*, 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982). The surrounding circumstances include the foreseeable consequences of a defendant's deliberate actions as a defendant "must be held to intend the normal and natural results of his deliberate act." *State v. Jones*, 18 N.C. App. 531, 534, 197 S.E.2d 268, 270, *cert. denied*, 283 N.C. 756, 198 S.E.2d 726 (1973).

Here, Defendant and his accomplice had discussed intentionally forcing motorists off the highway in order to rob them. Defendant or his accomplice then deliberately threw a very large rock or concrete chunk through the driver's side windshield of Underwood's automobile as it was approaching at approximately 55 or 60 miles per hour. It is easily foreseeable that such deliberate action could result in death, either from the impact of the rock on Underwood or from

Underwood's losing control of her vehicle and becoming involved in a deadly automobile accident. Defendant's argument lacks merit and is thus overruled.

**[2]** Defendant also assigns as error the trial court's denials of his motion to set aside the verdict of guilty on the charge of assault with a deadly weapon with intent to kill inflicting serious injury and for a new trial. However, Defendant failed to argue this assignment of error in his brief, and it is thus deemed abandoned pursuant to Rule 28(b)(6) of the Rules of Appellate Procedure.

## II. Jury Instruction on Acting in Concert

**[3]** By Defendant's next assignment of error, he argues that the trial court abused its discretion in instructing the jury on the doctrine of acting in concert as no evidence supported this instruction.

> "[A]n instruction about a material matter not based on sufficient evidence is erroneous. In other words, it is error to charge on an abstract principle of law not raised by proper pleading and not supported by any view of the evidence." *Dunlap v. Lee*, 257 N.C. 447, 126 [S.E.2d] 62 [(1962)]. Our Court has said "it is an established rule of trial procedure with us that an abstract proposition of law not pointing to the facts of the case at hand and not pertinent thereto should not be given to the jury" and "[]an instruction about a material matter not based on sufficient evidence is erroneous." *Childress v. [Johnson Motor Lines, Inc.]*, 235 N.C. 522, 70 S.E. 558 [(1952),] and many cases therein cited.

*Vann v. Hayes*, 266 N.C. 713, 715, 147 S.E.2d 186, 187 (1966).

A defendant can be found guilty of a crime under a theory of acting in concert where "he is present at the scene and acting together with another or others pursuant to a common plan or purpose to commit the crime." *State v. Taylor*, 337 N.C. 597, 608, 447 S.E.2d 360, 367 (1994), *cert. denied*, 533 S.E.2d 475 (1999). "If the defendant is present with another and with a common purpose does some act which forms a part of the offense charged, the judge must explain and apply the law of 'acting in concert.' " *State v. Mitchell*, 24 N.C. App. 484, 486, 211 S.E.2d 645, 647 (1975).

In this case, Underwood testified that she saw a black male wearing a grey sweatshirt and blue jeans standing on the side of the road holding a rock, which he looked like he was about to throw. Underwood did not identify Defendant as the person she had seen

preparing to throw the rock. After the rock had been thrown through the windshield and the victims had stopped the car on the side of the road, Defendant approached their car and stated that the person who had thrown the rock was just up the road. Underwood and Pope were then attacked and robbed. Underwood and Pope gave significantly different descriptions of the assailant's weight and the type of shoes the assailant was wearing. They also testified that, following the robbery, two men returned to the car and started beating on the windows after the victims had closed and locked the doors.

Defendant told Detective Ranew that he and Antoine Henri Ackin planned the robbery and that Ackin told him, "[w]atch this," just before hurling the rock at Underwood's windshield. Defendant also stated that Ackin took the wallet from Pope and later gave it to him. We conclude that this evidence was sufficient to warrant an instruction on the doctrine of acting in concert.

Defendant argues further, however, that "[t]he State's theory was that [Defendant] committed these offenses all by himself[,]" and "[t]hus, the prosecutors dismissed the charges against Antoine Ackin." This is incorrect. In his opening argument, the prosecutor stated:

> One of the things I think [the judge] is going to tell you about this is a part of the law we call acting in concert. Amongst the things he's going to tell you, that in order for you to be guilty of a crime, it's not necessary that you do all of the crime, only that you do a part in conjunction with another person for a common purpose. And just keep that in mind as y'all listen to these deliberations because there are going to come up other names about people who were involved in this offense.

Furthermore, in his closing argument, the prosecutor stated, "Our position is that [Defendant] acted in concert but we were never able to clearly establish who the other person would have been." Moreover, the sufficiency of the evidence against a co-defendant is irrelevant and, contrary to Defendant's contention that the State cannot "seek a conviction based upon the presence of some unidentified person[,]" a defendant may be found to be acting in concert with an unidentified person. Defendant's assignment of error, therefore, fails.

### III. Jury Instruction on Lesser-Included Offense

**[4]** Defendant next argues that the trial court erred by failing to instruct the jury on assault inflicting serious injury on Underwood as

a lesser-included offense of assault with a deadly weapon with intent to kill inflicting serious injury. Defendant contends that the trial court erred in determining as a matter of law that the rock used to assault Underwood was a deadly weapon.

"A trial court must give instructions on all lesser-included offenses that are supported by the evidence, even in the absence of a special request for such an instruction; and the failure to so instruct constitutes reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense." *State v. Bumgarner*, 147 N.C. App. 409, 417, 556 S.E.2d 324, 330 (2001) (quoting *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000), *cert. denied*, 531 U.S. 1083, 148 L. Ed. 2d 684 (2001)). However, a trial court must submit a lesser-included offense to the jury "when, and only when, there is evidence from which the jury can find that [the] defendant committed the lesser-included offense." *State v. Summitt*, 301 N.C. 591, 596, 273 S.E.2d 425, 427 (1981). "[W]hen all the evidence tends to show that defendant committed the crime charged in the bill of indictment and there is no evidence of the lesser-included offense, the court should refuse to charge on the lesser-included offense." *Id.* (citation omitted).

The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are "(1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). "Misdemeanor assault inflicting serious injury . . . [is a] lesser[-]included offense[] of assault with a deadly weapon with intent to kill inflicting serious injury . . . ." *State v. Lowe*, 150 N.C. App. 682, 685, 564 S.E.2d 313, 315 (2002). The elements of this lesser-included offense are (1) an assault (2) inflicting serious injury. *See* N.C. Gen. Stat. § 14-33(c)(1) (2007).

A deadly weapon "is generally defined as any article or substance which is likely to produce death or great bodily harm." *State v. Torain*, 316 N.C. 111, 120, 340 S.E.2d 465, 470, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). "[T]he evidence in each case determines whether a certain kind of [weapon] is properly characterized as a lethal device as a matter of law or whether its nature and manner of use merely raises a factual issue about its potential for producing death." *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 726 (1981). "Where the alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly within the foregoing defini-

tion is one of law, and the Court must take the responsibility of so declaring." *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924) (citation omitted).

Here, the instrument used to assault Underwood was a rock which, when thrown at the driver's side windshield of Underwood's car as she was driving 55 or 60 miles per hour, was large enough to shatter the windshield, bend the steering wheel, and fracture Underwood's skull. We agree with the trial court that the size of the rock and the manner in which it was used leads to the sole conclusion that the rock was a deadly weapon. Accordingly, the trial court did not err in determining as a matter of law that the rock used to assault Underwood was a deadly weapon and did not err in refusing to charge the jury as to the lesser-included offense of assault inflicting serious injury.

### IV. Expert Testimony

[5] Finally, Defendant argues that the trial court abused its discretion in permitting Dr. Terri Zacco to offer her opinion that Underwood's head injuries were serious. Defendant contends that as an expert in the field of radiology, Dr. Zacco was not qualified to offer such an opinion based solely upon her review of Underwood's C.T. scans.

Trial courts must decide preliminary questions concerning the qualifications of experts to testify or the admissibility of expert testimony. N.C. Gen. Stat. § 8C-1, Rule 104(a) (2007). Trial courts are afforded "wide latitude of discretion when making a determination about the admissibility of expert testimony." *Bullard*, 312 N.C. at 140, 322 S.E.2d at 376. "Given such latitude, it follows that a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004).

Dr. Zacco testified that she is a radiologist with Carolina Regional Radiology and has been a radiologist for 11 years. In order to become licensed to practice medicine in the state of North Carolina, she completed four years of undergraduate school, four years of medical school, a year of rotating internship, and four years of radiology residency. The trial court explained to the jury that Dr. Zacco would "be allowed to testify as an expert witness in the [field] of medicine specializing in radiology." Defendant made no objection to this at trial and admits in his brief that "Dr. Zacco was a radiologist and, as such, specialized in reading x-rays and other diagnostic scans."

North Carolina Rule of Evidence 702 provides, in pertinent part:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2007).

Dr. Zacco testified that, based on her reading of Ms. Underwood's C.T. scan, "Ms. Underwood's trauma was definitely very serious intracranial trauma with serious brain injury and serious orbital injury with all the bone damage that was suffered." Such testimony could assist the jury in determining a fact at issue—whether serious injury was inflicted upon Underwood. Defendant asserts that "[w]hile [Dr.] Zacco could make a diagnosis based upon the C.T. scans, she was not qualified to offer an opinion on the ultimate legal question in this matter—whether Underwood suffered 'serious' injury." Defendant's argument borders on being frivolous. Without objection, Dr. Zacco was qualified as an expert in the field of medicine specializing in radiology. She was, therefore, competent to offer her expert opinion on the diagnosis of Ms. Underwood's injuries, including the severity of those injuries, and Dr. Zacco's "expert opinion testimony is not rendered inadmissible on the basis that it embraces an ultimate issue to be determined by the jury." *State v. Boyd*, 343 N.C. 699, 710, 473 S.E.2d 327, 332, (1996) (citing N.C. Gen. Stat. § 8C-1, Rule 704). Defendant's argument is without merit and is overruled.

We conclude Defendant received a fair trial free of error.

NO ERROR.

Judges STEELMAN and GEER concur.