RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0121p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 21-5811

HAROLD VERNON SMITH, aka Steven Charles Harmon,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
No. 2:19-cr-00005-1—J. Ronnie Greer, District Judge.

Argued: January 25, 2023

Decided and Filed: June 9, 2023

Before: BUSH, LARSEN, and MATHIS, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ARGUED:** Eric D. Reach, REACH & REACH, Johnson City, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Eric D. Reach, REACH & REACH, Johnson City, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

JOHN K. BUSH, Circuit Judge. After police arrested Harold Smith with a loaded gun in his possession, he was charged with illegally possessing a firearm and ammunition as a felon. Leading up to trial, he had the opportunity to stipulate his status as a felon and his knowledge of the same to preclude the government from introducing evidence of any of his prior felony

convictions.  But he declined.  So the government introduced evidence of Smith's eleven prior felony convictions at trial, and a jury convicted him on both charges.  As Smith had three prior violent felony convictions, the district court sentenced him as an armed career criminal.

Smith raises two issues on appeal.  First, he asks that we vacate his conviction and sentence based on the alleged unfairly prejudicial taint of evidence of his eleven prior felony convictions.  We decline and affirm the district court on this issue.  Smith then asks that we vacate his sentence and remand for resentencing because his North Carolina conviction for assault with a deadly weapon with intent to kill and inflicting serious injury should not qualify as a predicate violent felony under the Armed Career Criminal Act (ACCA).  Because the offense requires purposeful or knowing conduct, it is categorically a violent felony, so we affirm.

## I.

When police learned from an informant that Smith was hiding in the woods and planned to flee the area, they prepared a ruse to arrest him for an outstanding parole violation.  Police borrowed their informant's truck, drove to a wooded area near an interstate exit in Bulls Gap, Tennessee, and then revved the engine and turned it off.  That was the signal Smith was expecting, and he emerged from the woods.  Officers then arrested and searched Smith as well as the surrounding area, and when they did, they found a loaded revolver in Smith's waistband and a box of ammunition nearby.

Smith was charged with two violations of 18 U.S.C. § 922(g)(1)—one count for the firearm, and another for the ammunition.  For each offense, the prosecution had to prove beyond a reasonable doubt that (1) Smith had been convicted of a prior felony, (2) he knew that he had been convicted of a felony, (3) he knowingly possessed the firearm or ammunition, and (4) the firearm or ammunition travelled in or affected interstate commerce.  *See* 18 U.S.C. § 922(g); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2195–96 (2019).  Testimony at trial established that the firearm and ammunition travelled through interstate commerce.  And while Smith did not confess to police that he owned the firearm and bullets, he later stated in a recorded phone call that he "had a gun and bullets" and could "do nothing about it" because he "got caught with the damn thing."  So knowing possession was not in great dispute.

But the government still had to prove that Smith had been convicted of a felony and that he knew that fact. Given the inherently prejudicial nature of prior convictions, criminal defendants can stipulate felon status and knowledge of that status to preclude the government from introducing evidence of prior felony convictions. *See Old Chief v. United States*, 519 U.S. 172, 174 (1997). And although he was advised of this option, Smith refused to stipulate to either element. To be clear, this refusal occurred after both his attorney and the district court advised Smith that he could so stipulate. The district court even admonished Smith "it's not my role . . . to advise you, . . . but I must tell you that this is an ill-advised decision." R171 PageID 1131. But held to its proof, the government sought to introduce evidence of Smith's prior felony convictions. And unfortunately for Smith, there were eleven to choose from: three convictions for grand larceny, one for forgery, two for robbery, four for escape, and one North Carolina conviction for assault with a deadly weapon with intent to kill and infliction of serious injury.

Smith responded by filing a motion in limine to preclude all evidence about his prior felony convictions. But the court rejected Smith's request, reasoning that the prior convictions were highly probative for Smith's status as a felon and his knowledge of that status. So the court admitted evidence of all of Smith's Tennessee and North Carolina felony convictions at trial, issuing a limiting instruction to the jury when it did so.

The jury convicted Smith of both charges. The district court classified Smith as an armed career criminal based on two prior armed robbery convictions and his North Carolina conviction. Smith challenged this classification, arguing that the North Carolina offense lacks the requisite mens rea to qualify as a violent felony under ACCA. The district court disagreed and sentenced Smith to 235 months' imprisonment. On this timely appeal, Smith challenges the district court's admission of evidence of all his prior felony convictions and its conclusion that the North Carolina offense is an ACCA-predicate offense.

**II.**

We begin with Smith's evidentiary challenge. Smith argues that the district court improperly allowed the government to introduce evidence of his eleven prior felony convictions in violation of Federal Rule of Evidence 403. Under that rule, the district court may exclude

relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The test itself is strongly weighted toward admission, but district courts enjoy "very broad" discretion in making the prejudice and probative value determinations. *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020); *see United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). Because the district court admitted evidence over Smith's objection, we review the admitted evidence by maximizing its probative value and minimizing its prejudicial effect. *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). And we will reverse only if the district court abused its discretion. *Nolan v. Memphis City Schs.*, 589 F.3d 257, 264–65 (6th Cir. 2009). No such abuse occurred here.

Start with probative value. Probative value is "the tendency of evidence to establish the proposition that it is offered to prove." 1 Robert P. Mosteller et al., McCormick on Evidence, § 185 (8th ed. 2020). When there are available, less prejudicial evidentiary alternatives to prove a proposition, we discount the probative value of the offered evidence and exclude it if the discounted probative value is substantially outweighed by unfair prejudice. *Asher*, 910 F.3d at 861 (citing *Old Chief*, 519 U.S. at 182–83).

To carry its burden of proof at trial, the government had to offer evidence proving beyond a reasonable doubt two essential elements of the charged crime: (1) Smith had a prior felony conviction and (2) he knew that status. Evidence of prior felony convictions has a significant tendency to prove both facts—multiple prior felony convictions are substantial evidence that Smith knew he was a felon. *See Greer v. United States*, 141 S. Ct. 2090, 2097 (2021). Smith concedes that absent a stipulation, there was no evidentiary alternative to prove he had a prior felony conviction. But he contends that the government did have an alternative to prove knowledge—it could have relied on testimony from his arresting officers that they had a warrant to arrest Smith for a parole violation. We disagree. The evidence of a parole violation did not identify the underlying offense, let alone prove that Smith knew he had been convicted of a felony. Lacking evidentiary alternatives, we cannot hold that the district court abused its discretion by concluding the prior conviction evidence was highly probative.

Nor did the district court abuse its discretion in concluding that the probative value of the prior conviction evidence was not substantially outweighed by the danger of unfair prejudice. Generally, all evidence of prior convictions will carry a risk of unfair prejudice. *Old Chief*, 519 U.S. at 185. But unfair prejudice is not "the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Rather, unfair prejudice refers to evidence that has an "undue tendency to suggest decision on an improper basis." *Old Chief*, 519 U.S. at 180 (quoting Fed. R. Evid. 403 Advisory Committee's Notes). This may occur when the evidence is particularly shocking or inflammatory, *Asher*, 910 F.3d at 861, or when it otherwise may "arouse the jury's hostility or sympathy without regard to the probative value of the evidence," McCormick on Evidence, § 185. Without a stipulation, the government could prove both the fact and nature of at least some of Smith's prior felony convictions, despite the inherent risk of prejudice. *See United States v. Johnson*, 803 F.3d 279, 282–83 (6th Cir. 2015). But a court can reduce the chance of prejudice by providing limiting instructions to the jury, which juries are generally presumed to follow. *See United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004); *Johnson*, 803 F.3d at 282. And in this case, Smith agrees that the district court provided an adequate limiting instruction.

Separating the admissible from the inadmissible requires some additional background on the Supreme Court's 18 U.S.C. § 922(g) jurisprudence. After *Old Chief*, the government had to accept a defendant's offer of admission that he had a qualifying felony. *See Old Chief*, 519 U.S. at 191–92. Infrequently, defendants declined to stipulate, and in those cases, we refused to create strict numerical restrictions on the number of felonies the government could introduce to prove that a defendant had been convicted of a felony. *See Johnson*, 803 F.3d at 282–83 (finding no issue with the government's introduction of two prior felony convictions after the defendant declined to stipulate that he had a prior felony conviction); *United States v. Davis*, 515 F. App'x 486, 487–88 (6th Cir. 2013) (same); *see also United States v. Ham*, 628 F.3d 801, 811 n.1 (6th Cir. 2011). But after *Rehaif*, the government had to prove not only that the defendant had been convicted of a felony, but that he knew he was a felon when he unlawfully possessed a weapon or firearm. *Rehaif,* 139 S. Ct. at 2195. Few courts have had the opportunity to consider how many convictions the government may introduce to prove knowledge after *Rehaif*. *See United*

*States v. Clark*, 32 F.4th 1080, 1091 (11th Cir. 2022) ("[W]e cannot establish a rule that says, 'Government, one and only one.'"). But presumably, evidence of multiple prior felony convictions is substantial evidence that a defendant knew he was a felon at the moment of possession. *See Greer*, 141 S. Ct. at 2097.

With that background, Smith's contention is that the district court should have restricted the number of felony convictions that the government could introduce. But on further inspection, Smith's argument is particularly tenuous. He does not argue that any of his prior convictions are especially offensive, or that some convictions are less probative than others. Nor does he propose a numerical limit before this court, beyond which the government's proof is presumptively unreasonable.[1] Indeed, short of arbitrarily choosing a number between one and eleven, Smith gave the district court no reasoned basis to restrict the government's presentation of evidence about two essential elements of his charged offenses. Introducing two or three prior felonies may be sufficient for a case to go to a jury, but is that alone proof of knowledge beyond a reasonable doubt? We decline to limit the government so arbitrarily. *See Johnson*, 803 F.3d at 283; *Davis*, 515 F. App'x at 487. After all, the government must satisfy the jurors' expectations of proper proof and is entitled to some degree of evidentiary richness and narrative integrity in presenting its case. *See Old Chief*, 519 U.S. at 188–89. So where, as here, we have only Smith's claim that eleven prior convictions are unduly prejudicial, we cannot find that the district court abused its discretion by disagreeing with Smith.

This does not imply that declining to stipulate gives the government carte blanche to introduce a defendant's entire felony record. If certain felonies are more probative of knowledge than others, either based on temporal proximity or the circumstances of the offense, then the defendant could have a reasoned basis for seeking to limit the introduction of other prior felonies. *See, e.g.*, *United States v. Raymore*, 965 F.3d 475, 486 (6th Cir. 2020) (explaining that two prior convictions for being a felon in possession made it "near-impossible . . . to contest knowledge of his status as a felon" on appeal). And district courts maintain significant discretion to otherwise exclude prior convictions based on their assessment of the probative value and

---

[1]Before the district court, he proposed that evidence of any more than two prior felony convictions is unduly prejudicial.

unfair prejudice under Rule 403. Fed. R. Evid. 403. But after declining a stipulation that would preempt concerns of unfair prejudice, defendants face an uphill climb to demonstrate on appeal why their decision should unduly hinder the government's prosecution.

**III.**

Smith next challenges his sentence under 18 U.S.C. § 924(e)(1). ACCA imposes a mandatory-minimum 15-year sentence on defendants who have "three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). An offense is a "violent felony" if, among other things, it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). This definition has both force and mental state components, but on appeal, Smith argues only that the North Carolina offense does not require the requisite "use" of force, which is knowing or intentional conduct. *See Borden v. United States*, 141 S. Ct. 1817, 1826–27, 1834 (2021). In deciding this issue, we apply the categorical approach. So the facts underlying Smith's North Carolina offense do not matter; instead we ask whether the elements of the North Carolina statute necessarily include intentional or knowing conduct. N.C. Gen. Stat. § 14-32(a); *see United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc).

We begin with the text. The relevant North Carolina offense is defined as follows: "[a]ny person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon." N.C. Gen. Stat. § 14-32(a). As interpreted by the North Carolina Supreme Court, "[t]he elements of this charge are (1) an assault, (2) with a deadly weapon, (3) an intent to kill, and (4) infliction of a serious injury not resulting in death." *State v. Grigsby*, 526 S.E.2d 460, 462 (N.C. 2000) (citing *State v. James*, 365 S.E.2d 579, 586 (N.C. 1988)). Smith's petition, then, turns on whether proving "intent to kill" under North Carolina law requires proving intentional or knowing conduct.

In construing "intent to kill," North Carolina courts have by and large found that "intent to kill" requires substantial evidence that the defendant had a specific intent to kill. *See Grigsby*, 526 S.E.2d at 462–63 (the facts showed "defendant's intent was not only to rob or to injure, but to kill"); *State v. Daniel*, 429 S.E.2d 724, 729 (N.C. 1993) ("A specific intent to kill is an

essential element of assault with a deadly weapon with intent to kill inflicting serious injury.") (citing N.C. Gen. Stat. § 14-32(a)); *see also State v. Cox*, 808 S.E.2d 339, 347–48 (N.C. Ct. App. 2017) (affirming a conviction for assault with a deadly weapon with intent to kill inflicting serious injury because the government presented substantial evidence defendant had a specific intent to kill); *State v. Liggons*, 670 S.E.2d 333, 337–38 (N.C. Ct. App. 2009) (same); *State v. Nicholson*, 610 S.E.2d 433, 435–36 (N.C. Ct. App. 2005) (same).

Consistent with this construction, North Carolina allows defendants to argue diminished capacity or voluntary intoxication prevented them from forming the requisite specific intent to kill. *See State v. Williams*, 447 S.E.2d 817, 821 (N.C. 1994) (explaining that the trial court commits reversible error when it refuses "to instruct the jury to consider the defendant's mental condition in connection with his ability to form a specific intent to kill" as required for assault with a deadly weapon with intent to kill); *Daniel*, 429 S.E.2d at 727–28 (testimony about defendant's organic brain impairment could have negated his ability to form specific intent to kill required for assault with a deadly weapon with intent to kill inflicting serious injury and first-degree murder); *see also State v. Parham*, 689 S.E.2d 244, 244 (N.C. 2009) (table) ("The defense of diminished capacity applies to the same element in both assault with a deadly weapon with intent to kill inflicting serious injury and attempted first-degree murder: a specific intent to kill."). The availability of these defenses bolsters our conclusion that "intent to kill" requires proof of intentional conduct that satisfies ACCA's elements clause. *See e.g.*, *State v. Johnson*, 866 S.E.2d 725, 732 (N.C. 2021) (explaining that intoxication and diminished-capacity defenses are unavailable for general-intent offenses). Thus, the district court properly treated Smith's North Carolina conviction as an ACCA predicate.[2]

Smith's counterargument is unpersuasive. Recognizing that the text of the statute and the bulk of North Carolina caselaw opposes his position, Smith devotes significant energy to explaining why one line of dicta in a North Carolina Supreme Court case should control instead. In *Jones*, the North Carolina Supreme Court had to determine whether assault with a deadly

---

[2]In so finding, we reach the same conclusion as the Fourth Circuit. *See United States v. Townsend*, 886 F.3d 441, 448 (4th Cir. 2018) (finding under North Carolina law, assault with a deadly weapon with intent to kill inflicting serious injury satisfies ACCA's elements clause).

weapon inflicting serious injury requires sufficient mens rea to support a first-degree murder conviction under the felony murder rule. *State v. Jones*, 538 S.E.2d 917, 923 (N.C. 2000). Lacking a specific intent requirement in the statutory language, the court concluded that this offense requires only culpable or criminal negligence, which is insufficient for first-degree murder. *Id.* But the court did not stop there. It added in dicta that "our analysis of defendant's conviction for [assault with a deadly weapon inflicting serious injury] demonstrates that culpable or criminal negligence may be used to satisfy the intent requisites for certain dangerous felonies, such as manslaughter [and] assault with a deadly weapon with intent to kill." *Id.* Smith claims that this indicates that his North Carolina offense requires only culpable or criminal negligence.

Smith's argument has several problems. The first is that this language, which Smith acknowledges is dictum, is Smith's only support for his position. *See, e.g.*, 19 Wright & Miller, Federal Practice and Procedure § 4507 (3d ed. 2022) (explaining "subsequent dictum from the state supreme court or clear doctrinal shifts [can] discredit[] an outdated holding," but the "best evidence" of how a state would decide an issue of state law are the relevant holdings of the state's highest court). Smith cannot identify a single case in North Carolina which held that assault with a deadly weapon with intent to kill inflicting serious injury can be satisfied by anything less than a specific intent to kill. To the contrary, North Carolina courts have continued to require substantial evidence of defendants' specific intent to kill for this offense. *See Cox*, 808 S.E.2d at 347–48; *State v. Wilkes*, 736 S.E.2d 582, 586 (N.C. Ct. App. 2013), *review denied by State v. Wilkes*, 739 S.E.2d 840, 841 (N.C. 2013); *Liggons*, 670 S.E.2d at 337–38; *Nicholson*, 610 S.E.2d at 435–36. Accordingly, we are satisfied that the weight of North Carolina authority supports our conclusion that the district court properly treated Smith's North Carolina conviction as an ACCA predicate.

## IV.

For all these reasons we AFFIRM the district court's judgment.