IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-414

Filed 18 June 2025

Duplin County, Nos. 20CRS051542-300, 21CRS000354-300

STATE OF NORTH CAROLINA

v.

MARSHJE TREANNAH SWINSON

Appeal by defendant from judgment entered 15 June 2023 by Judge George Robert Hicks III in Duplin County Superior Court. Heard in the Court of Appeals 16 January 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Reginaldo E. Williams, Jr., for the State.*
>
> *William D. Spence for defendant.*

FREEMAN, Judge.

Defendant appeals from judgment entered upon a jury verdict of guilty on the charges of second-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon inflicting serious injury. On appeal, defendant argues that the trial court erred by: (1) denying her motion to dismiss the second-degree murder charge; (2) sentencing her as a Class B1 felon instead of a Class B2 felon for the second-degree murder conviction; and (3) denying her motion to dismiss the assault with a deadly weapon with intent to kill inflicting

serious injury charge. After careful review, we conclude that defendant received a trial free of prejudicial error.

## I. Factual and Procedural Background

In October 2020, defendant was living with the murder victim, Lonnel Henderson, at the Wells Trailer Park. On the morning of 23 October, defendant and Lonnel had a volatile argument and defendant left to stay with Lonnel's sister, Lannel Henderson, in the same park.

Later that day, defendant went shopping with her cousin, Zeniqua Carr. Defendant then returned to the Lonnel's trailer with Lannel to retrieve some personal belongings while Zeniqua waited outside. Defendant visibly carried a handgun in her pants. Lonnel, who was inside the trailer, noticed that defendant was carrying a handgun and the two began arguing. At this point, two of Lonnel's other sisters, Shardonnay Langley and Kyra Pearsall, came to the trailer and the argument escalated. Ultimately, the argument moved outside where it turned into a physical altercation.

At trial, the State and defendant presented conflicting evidence as to what occurred next. The State's evidence tended to show that once outside of the trailer, Lonnel pushed Zeniqua to the ground, then Shardonnay jumped on top of her and began beating her. Defendant then took out her gun and used it to hit Shardonnay on the back of her head. Shardonnay continued to fight Zeniqua, and Lonnel knocked the gun out of defendant's hand. Zeniqua then picked up the gun, and defendant told

her, "There's one in the head, [Zeniqua]," which meant there was "one bullet ready to be fired." Zeniqua handed the gun back to defendant. Defendant raised the gun and shot Lonnel.

Shardonnay then ran at defendant. Defendant again raised the gun and shot Shardonnay; the bullet grazed her forehead, causing her to bleed. Lonnel died at the scene of a gunshot wound to the chest, as the bullet entered his shoulder and pierced both of his lungs and his pulmonary artery.

In contrast, defendant's testimony painted a different version of events. According to defendant, Lonnel pushed Zeniqua to the ground and began hitting her, while Shardonnay started "coming at" defendant after the fracas started. Defendant then pulled out the gun "for her safety," cocked it, and asked everyone to "chill" and "leave [Zeniqua] alone." Then, Shardonnay tried "to grab the gun out of [her] hand," and defendant "kept trying to move it so the gun was pretty much going which or every way." During this clash, the gun discharged, and defendant saw Lonnel holding his arm. Shardonnay "still kept trying to fight like nothing ever happened," which resulted in the gun "going off a second time." After the second shot went off, Shardonnay let go of the gun and "ended up trying to get towards her brother." Defendant testified that she did not know who pulled the trigger for either shot.

Defendant left the trailer park after the shootings. Early the next morning, defendant voluntarily went to the Wallace Police Department where she was placed under arrest. Defendant was indicted for the first-degree murder of Lonnel

Henderson. Defendant was also indicted for the attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon inflicting serious injury upon Shardonnay Langley.

Defendant's matter came on for trial on 30 May 2023. At the close of evidence, defendant moved to dismiss the murder and assault with a deadly weapon with intent to kill inflicting serious injury charges. The trial court denied these motions. The jury found defendant guilty of second-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, and assault with a deadly weapon inflicting serious injury.

The trial court found no aggravating or mitigating factors and sentenced defendant to 240–300 months imprisonment upon the Class B1 felony conviction of second-degree murder. The trial court further sentenced defendant to 73–100 months imprisonment for the assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury convictions, to run consecutively with defendant's second-degree murder sentence. Defendant timely appealed.

## II. Jurisdiction

This Court has jurisdiction to review "any final judgment of a superior court, other than one based on a plea of guilty or nolo contendere[.]" N.C.G.S. § 7A-27(b)(1) (2023); *see also* N.C.G.S. § 15A-1444(a) (2023) ("A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled

to appeal as a matter of right when final judgment has been entered.").  Accordingly, we have jurisdiction over defendant's appeal of right.

### III.  Standard of Review

We review a denial of a motion to dismiss de novo to determine whether "there was substantial evidence (1) of each essential element of the offense charged, and (2) that defendant is the perpetrator of the offense[.]"  *State v. Collins*, 283 N.C. App. 458, 465 (2022) (cleaned up).  We review sentencing errors de novo.  *State v. Mosley*, 256 N.C. App. 148, 150 (2017).

### IV.  Discussion

Defendant argues that the trial court erred by: (1) denying her motion to dismiss the second-degree murder charge; (2) sentencing her as a Class B1 felon instead of a Class B2 felon upon conviction of second-degree murder; and (3) denying her motion to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge.  We address each argument in turn.

### A.  Motion to Dismiss the Second-Degree Murder Charge

Defendant first contends that the trial court erred in denying her motion to dismiss the second-degree murder charge.  Specifically, defendant argues the State failed to present substantial evidence that she acted with the malice necessary to sustain a conviction of second-degree murder.

To survive a motion to dismiss, the State must submit substantial evidence of each essential element of the charge.  *Collins*, 283 N.C. App. at 465.  "Substantial

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Vause*, 328 N.C. 231, 236 (1991) (cleaned up). This evidence need only be more than a "mere scintilla, which only raises a suspicion or possibility of the fact in issue." *State v. Earnhardt,* 307 N.C. 62, 66 (1982) (quoting *State v. Johnson,* 199 N.C. 429, 431 (1930)). "[I]t is well settled that the evidence is to be considered in the light most favorable to the State and that the State is entitled to every reasonable inference to be drawn therefrom." *State v. Alexander*, 337 N.C. 182, 187 (1994). "Any contradictions or conflicts in the evidence are resolved in favor of the State[.]" *State v. Miller*, 363 N.C. 96, 98 (2009).

The elements of second-degree murder are "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Arrington*, 371 N.C. 518, 523 (2018) (cleaned up). "Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *State v. Brewer*, 328 N.C. 515, 522 (1991). There are three theories of malice:

> (1) express hatred, ill will, or spite; (2) commission of inherently dangerous acts in such a reckless and wanton manner as to manifest a mind utterly without regard for human and social duty and deliberately bent on mischief; or (3) a condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.

*State v. Coble*, 351 N.C. 448, 450–51 (2000) (cleaned up). The second kind of malice is commonly referred to as depraved-heart malice. *State v. Fuller*, 138 N.C. App. 481,

484 (2000). The third kind of malice, condition of mind malice, may be "established by [an] intentional infliction of a wound with a deadly weapon that results in death." *Coble*, 351 N.C. at 451 (cleaned up).

This Court has held that the State presented substantial evidence of malice by showing a defendant's intentional act under circumstances analogous to those present here. For instance, evidence that a defendant shot two people at close range after a heated argument was "sufficient evidence presented that defendant unlawfully murdered [the victim] with malice." *State v. Stitt*, 201 N.C. App. 233, 246 (2009). In another case, when "the State presented evidence that [the] defendant retrieved a gun from his vehicle and intentionally fired the gun" at the victim, we held that there was "sufficient evidence for the jury to infer malice on the part of defendant" to survive a motion to dismiss. *State v. Banks*, 191 N.C. App. 743, 746, 751 (2008).

Here, defendant's argument that there was insufficient evidence to show malice fails. The State's evidence, viewed in the light most favorable to the State, provided more than a "mere scintilla of evidence," *Earnhardt*, 307 N.C. at 66 (citation omitted), that defendant acted intentionally when she retrieved and fired the gun. Specifically, the State presented the testimonies of three witnesses who saw defendant raise the gun and shoot Lonnel. Their testimonies further established that defendant was in control of the gun when it was discharged because Shardonnay was occupied with fighting Zeniqua at the time Lonnel was shot. Additionally,

defendant's own testimony showed that she pulled out the gun and cocked it before Lonnel was shot.

Though portions of defendant's evidence conflict with the State's evidence, "[a]ny contradictions or conflicts in the evidence are resolved in favor of the State." *Miller*, 363 N.C. at 98. Accordingly, defendant's contradictory evidence does not impact our analysis of whether the State presented substantial evidence to survive defendant's motion to dismiss.

This evidence, including the testimony that defendant raised the gun and shot Lonnel, is sufficient to allow a reasonable mind to accept as adequate to support the conclusion that defendant acted intentionally when she fired the gun. And because evidence of such intentional conduct is "sufficient evidence for the jury to infer malice on the part of the defendant," *Banks*, 191 N.C. App. at 751, the trial court did not err by denying defendant's motion to dismiss the second-degree murder charge.

## B. Sentencing

Defendant next asserts that the trial court erred in sentencing her as a Class B1 felon upon her conviction of second-degree murder because the jury's verdict was ambiguous. Specifically, defendant argues her testimony "that she did not intend to shoot [Lonnel] and that the gun went off during a struggle for the gun" was sufficient evidence to support sentencing as a Class B2 felon because this testimony demonstrated that she acted with depraved-heart malice.

"Any person sentenced who commits second degree murder shall be punished as a Class B1 felon[.]" N.C.G.S. § 14-17(b) (2023). However, if "the malice *necessary* to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief[,]" then the defendant "shall be punished as a Class B2 felon." *Id.* (emphasis added). In other words, a defendant convicted of second-degree murder can be sentenced as a Class B2 felon *only if* there is no evidence to show that they acted with anything other than depraved-heart malice. *See id.*

When a defendant is charged with second-degree murder, the trial court may provide the jury with special verdict form to identify under which theory of malice it found the defendant guilty. *See State v. Borum*, 384 N.C. 118, 118 (2023). Otherwise, the trial court gives the jury a general verdict form, which means that the specific theory for the jury's finding is unknown. *See Mosley*, 256 N.C. App. at 149.

When there is no evidence "presented that would support a finding that an accused acted with depraved-heart malice, . . . it would be inferred from a general verdict that the jury found the accused guilty of B1 second-degree murder." *State v. Lail*, 251 N.C. App. 463, 471 (2016). However, a general verdict form is ambiguous for sentencing purposes when "the jury is . . . presented with evidence that may allow [it] to find that either B2 depraved-heart malice or another B1 malice theory existed." *Id.* at 475. With a verdict so ambiguous, "neither we nor the trial court [are] free to

speculate as to the basis of a jury's verdict, and the verdict should be construed in favor of the defendant." *Mosley*, 256 N.C. App. at 153.

In determining whether the defendant in *Mosley* was entitled to resentencing as a Class B2 felon, we reasoned:

> In the case *sub judice*, . . . there was evidence of defendant's reckless use of a rifle, a deadly weapon. Specifically, defendant testified that as he was arguing with the victim, he was holding the rifle with his finger on the trigger and without the safety on. Defendant stated this was how he always handled the rifle—finger on the trigger and no safety. Defendant testified that in this instance, the gun went off when the victim grabbed the barrel of the rifle and he pushed her away. There was also testimony about the safety of the rifle and testimony from a firearm expert that "you would never teach anyone to have their finger on the trigger until they are ready to fire."

*Id.* at 152–53 (cleaned up).

We held that this was evidence "from which the jury could have found depraved-heart malice to convict [the] defendant of a Class B2 second degree murder." *Id.* at 153. Because the evidence there *could* have supported a finding of depraved-heart malice, we concluded that the jury's general verdict form was ambiguous and that the trial court therefore erred by sentencing the defendant as a Class B1 felon rather than construing the verdict in favor of the defendant. *Id.*

On the other hand, in *State v. Crisp*, we concluded the defendant was not entitled to resentencing in part because there was no "*reckless use* of a deadly weapon constitut[ing] depraved heart malice." 281 N.C. App. 127, 137 (2021) (emphasis

added) (citing *Mosley*, 256 N.C. App. at 152–53). There, we determined the evidence that the defendant "left an empty-chambered gun unattended, or that [the victim] grabbed the gun, which [the defendant] maintain[ed] *he did not use* and believed was unloaded" was "insufficient to show that [the defendant] committed an inherently dangerous act" that would support a finding of depraved-heart malice. *Id.* (emphasis added). Because this evidence—which did not indicate the defendant's reckless use of a deadly weapon—could not support a finding of depraved-heart malice, the general verdict was unambiguous and the trial court did not err by sentencing the defendant as a Class B1 felon. *Id.*

Here, defendant's contention that the jury's verdict was ambiguous because this case is "identical" to *Mosley* fails because there was no "evidence of defendant's reckless use . . . [of] a deadly weapon." *Mosley*, 256 N.C. App. at 152. At trial, the State's evidence tended to show that the defendant intentionally raised the gun and shot Lonnel. Defendant's own testimony, on the other hand, failed to provide evidence of her reckless use of the firearm. Specifically, when repeatedly asked to describe "how the gun discharged," defendant testified:

> Q. Now, you testified that you shot twice?
>
> A. I did not say I shot twice. I said someone's trying to get the gun out of my hand and fight me while the gun was in my hand, and that's how the gun went off.
>
> Q. Okay. Twice?
>
> A. Yes. It went twice. She never stopped trying to fight. She

kept going . . .

A. She kept trying to fight me with the gun in my hand repeatedly. That's how the gun went off the first time, and she kept going, and that's how it went off the second time.

. . .

Q. Did you fire the handgun that night, Ms. Swinson?

A. No, sir, I did not.

. . .

Q. Do you know how the gun discharged that night?

A. Because me and Shardonnay—again, like I stated, she kept trying to fight me with the gun in my hand, was trying to jump on me with the gun in my hand. And I constantly kept saying, Shardonnay stop, stop Shardonnay, stop. She wouldn't stop. That's when the first shot went off.

. . .

Q. Originally, where was it when you—you had possession of it?

A. I had it right here, like on my side, telling her to stop.

Q. When Shardonnay was grabbing for the handgun, where did it go, to the best of your recollection?

A. Pretty much like I said, pretty much everywhere 'cause I kept saying to Shardonnay, stop. So I'm trying to pull, and she's keep trying to fight me and keep swinging and swinging and swinging. I'm, Shardonnay, stop, and that's when the first pow went off. Like I said I just stood there after the first pow went off.

Thus, according to defendant, she did not recklessly use the firearm because she did not *use* the firearm at all. Unlike in *Mosley*, where the defendant testified

that "he was holding the rifle with his finger on the trigger and without the safety on" and that "the gun went off when the victim grabbed the barrel of the rifle and he pushed her away," 256 N.C. App. at 152–53, defendant here did not provide any evidence that she was using the firearm in such a reckless manner or any explanation of how the gun discharged. Instead, according to defendant, the gun mysteriously fired twice because Shardonnay "kept going."

Neither version of events—the State's version in which defendant intentionally fired two shots, or defendant's version in which she did nothing wrong and the gun mysteriously fired two shots—constitute the kind of reckless conduct that could support depraved-heart malice. Based on the evidence presented at trial, the jury only could have found defendant guilty of second-degree murder under the theories that support sentencing as a Class B1 felon. Therefore, the jury's verdict is unambiguous, and the trial court did not err by sentencing defendant as a Class B1 felon.

Defendant alternatively argues that the trial court plainly erred by failing to instruct the jury on the depraved-heart theory of malice. An instruction on depraved-heart malice would be warranted when there is evidence presented at trial that would support a finding that a defendant acted with depraved-heart malice. *See Lail,* 251 N.C. App. at 475; *see also State v. Clark*, 201 N.C. App. 319, 323 (2009) ("An instruction on a lesser-included offense must be given only if the evidence would permit the jury to rationally find [the] defendant guilty of the lesser offense and to

acquit him of the greater." (citation omitted)). "When determining whether there is sufficient evidence for submission of a lesser included offense to the jury, we view the evidence in the light most favorable to defendant." *Clark,* 201 N.C. App. at 323 (citation omitted).

As discussed above, the evidence in this case, even in the light most favorable to defendant, could not support a finding that defendant acted with depraved-heart malice because the evidence does not demonstrate reckless use of the firearm. Accordingly, the trial court did not err, let alone plainly err, by failing to instruct the jury on the depraved-heart theory of malice.

## C. Motion to Dismiss Assault with a Deadly Weapon with Intent to Kill Inflicting Serious Injury Charge

Finally, defendant contends the trial court erred by denying her motion to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge. Defendant specifically argues the State did not present substantial evidence that defendant had an intent to kill.

"The essential elements of assault with a deadly weapon with intent to kill inflicting serious injury are (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death." *State v. Liggons*, 194 N.C. App. 734, 742 (2009) (cleaned up); *see also* N.C.G.S. § 14-32(a) (2023) ("Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon.").

"An intent to kill is a mental attitude, and ordinarily it must be proved . . . by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Cauley,* 244 N.C. 701, 708 (1956). "An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. Thacker,* 281 N.C. 447, 455 (1972). "The surrounding circumstances include the foreseeable consequences of a defendant's deliberate actions[,] as a defendant must be held to intend the normal and natural results of his deliberate act." *Liggons*, 194 N.C. App. at 739 (cleaned up).

Here, the State offered evidence that defendant raised her loaded and cocked gun and shot at Shardonnay while she was running towards defendant. Shardonnay's death would have been a natural and foreseeable consequence of shooing directly at her, so the jury could have reasonably found that defendant acted with intent to kill when she shot at Shardonnay.

Considering the evidence in the light most favorable to the State, there was substantial evidence to show that defendant acted with intent to kill Shardonnay. Therefore, the trial court did not err by denying defendant's motion to dismiss the assault with a deadly weapon with intent to kill inflict serious injury.

## V.    Conclusion

The trial court correctly denied defendant's motion to dismiss the second-degree murder charge because the State presented substantial evidence that

defendant acted with malice. Because there was no evidence presented by either party to support that defendant acted with depraved-heart malice such to render the jury's verdict ambiguous, the trial court properly sentenced defendant as a Class B1 felon upon the conviction of second-degree murder. Finally, the trial court also correctly denied defendant's motion to dismiss the assault with a deadly weapon with intent to kill inflicting serious injury charge because the State presented substantial evidence that defendant acted with intent to kill. Accordingly, we conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges HAMPSON and GORE concur.